EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio Parkside

  Demandantes-Recurridos

           v.

Villa Edamorga, Inc. and Co., et al.

    Demandadas todas y peticionarios los miembros de la Sucn. Ugarte | Certiorari

2004 TSPR 77

161 DPR _____ |

Número del Caso: CC-2001-109
        Cons. CC-2001-111

Fecha: 19 de mayo de 2004

Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:
                Hon. Jeannette Ramos Buonomo


Abogados de la Parte Peticionaria:
                Lcdo. Francisco A. Besosa
                Lcda. Lourdes I. Morera Ledón
                Lcda. Alicia I. Lavergne Ramírez
                Lcdo. Jorge A. Miranda


Abogados de la Parte Recurrida:
                Lcdo. Michel J. Godreau
                Lcdo. Juan J. Hernández López de Victoria


Materia: Acción Reivindicatoria y Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio Parkside

    Demandantes recurridos

        v.                         CC-2001-109
                                  CC-2001-111
Villa Edamorga, Inc. and Co.,     (cons.)
*et al.*

    Demandadas todas y
    peticionarios los miembros
    de la Sucn. Ugarte

Opinión del Tribunal emitida por la Jueza Presidenta señora NAVEIRA MERLY

San Juan, Puerto Rico a 19 de mayo de 2004

Los recursos de autos son secuela de nuestra Opinión en el caso *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.*, 128 D.P.R. 538 (1991). En esta ocasión nos corresponde dilucidar si, para efectos de adjudicar si la sucesión Ugarte fue poseedora de buena o mala fe con respecto a un inmueble sometido al régimen de propiedad horizontal, se le puede imputar el conocimiento de las constancias del Registro de la Propiedad. De resolver que la posesión fue de mala fe, será preciso determinar si la sucesión debe

reembolsar los frutos dejados de percibir por el Consejo de Titulares a la luz de un uso recreativo o de un uso comercial de los locales objeto del litigio.

Aunque el trasfondo fáctico del presente caso se expone detalladamente en nuestra opinión de *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.*, *supra*, a continuación exponemos los hechos más relevantes para una mejor compresión de las controversias que nos atañen.

I

En 1965 la Junta de Planificación del Estado Libre Asociado de Puerto Rico (en adelante la Junta) aprobó el desarrollo preliminar de un edificio multifamiliar, conocido actualmente como el Condominio Parkside. La planificación, desarrollo, construcción, financiamiento y venta del Condominio Parkside estuvo a cargo de M.G.I.C. Financial Corporation (en adelante M.G.I.C. Financial), que formó parte de una empresa común con el Sr. Edmundo De Jesús y Villa Edamorga, Inc. (en adelante Villa Edamorga).

En 1972 el señor De Jesús, a nombre propio y en representación de Villa Edamorga y Paradise Gardens, Inc., tramitó ante la Junta la aprobación de un uso distinto al autorizado originalmente consistente en la ubicación de servicios vecinales y usos accesorios en el

inmueble. La Junta aprobó la ubicación de servicios vecinales en la primera planta del edificio, conforme a la propuesta de Villa Edamorga y Paradise Gardens, Inc. de utilizar las áreas para oficinas de médicos. En el mismo año el señor De Jesús presentó para inscripción ante el Registro de la Propiedad la escritura matriz del edificio y los planos correspondientes y de esta forma el inmueble quedó sometido al régimen de propiedad horizontal. **En la escritura matriz los dos (2) locales en controversia fueron identificados como áreas de servicios comunales (*community services areas*), mientras que en el plano se identificaron como áreas recreativas (*recreational areas*).** El Registrador de la Propiedad, sin percatarse de la inconsistencia, posteriormente individualizó e inscribió las referidas áreas como fincas independientes, considerándolas áreas comerciales.

En 1976, luego de la construcción, venta y ocupación del condominio, el señor De Jesús presentó una consulta ante la Administración de Reglamentos y Permisos (en adelante A.R.P.E.) para que, conforme a la reglamentación aplicable, le indicara los usos que se le podían dar a los dos (2) locales ubicados en la primera planta. A.R.P.E. concluyó que éstos podían ser utilizados para farmacia, oficinas de médicos, colmado, ferretería, cafetería, panadería y lavandería. No obstante, señaló que cada uno de los usos debía ser solicitado por separado.

Posteriormente, el 22 de agosto de 1977, se inscribió en el Registro de la Propiedad una dación en pago pactada entre M.G.I.C. Financial y Villa Edamorga mediante una escritura de 13 de agosto del mismo año. M.G.I.C. Financial adquirió de Villa Edamorga los locales en controversia mediante la dación. El 21 de marzo de 1980 M.G.I.C. Financial vendió los locales a Parkside Gardens, Inc.

En 1981 el señor De Jesús sometió una solicitud de permiso para operar oficinas profesionales en la primera planta del Condominio Parkside. El Consejo de Titulares se opuso y adujo que las áreas a las que se pretendía dar un uso comercial eran comunes. A.R.P.E. autorizó el uso solicitado y el Consejo de Titulares recurrió ante la Junta de Apelaciones de este organismo, la cual confirmó dicha determinación. Así las cosas, el 20 de febrero de 1984 el Consejo de Titulares presentó una acción reivindicatoria a los fines de establecer su titularidad sobre los locales objeto del litigio y solicitar la revisión de la decisión administrativa.

De otra parte, el señor De Jesús, luego de obtener el permiso de uso comercial, otorgó a través de Parkside Gardens, Inc., unas hipotecas sobre los locales en controversia a favor del Sr. Claudio Ugarte, la Sra. Margarita Domenech y la sociedad legal de gananciales compuesta por ambos, mediante escrituras otorgadas el 21 de marzo de 1980. Ante el incumplimiento del señor De

Jesús con su obligación crediticia, el matrimonio Ugarte-Domenech presentó una acción de ejecución de hipoteca por la vía ordinaria. El 10 de agosto de 1982 el Tribunal de Primera Instancia, Sala Superior de Bayamón, emitió sentencia a favor de los esposos Ugarte-Domenech y posteriormente expidió el mandamiento de ejecución. Convocada la subasta, el matrimonio Ugarte-Domenech obtuvo la buena pro y el 15 de diciembre de 1982 el alguacil de tribunal otorgó escritura de venta judicial a favor de éstos y la sociedad legal de gananciales, quienes inscribieron su título en el Registro de la Propiedad.

Luego de la venta judicial de los locales, los esposos Ugarte-Domenech contestaron la demanda de reivindicación instada por el Consejo de Titulares y adujeron que eran terceros registrales. Además, presentaron una moción de sentencia sumaria a la que se opuso el Consejo de Titulares por entender que existía una controversia sobre hechos materiales. El 22 de mayo de 1986 el foro de instancia dictó sentencia sumaria en la que determinó que las áreas en controversia pertenecían en común pro indiviso al Consejo de Titulares y ordenó a A.R.P.E. abstenerse de autorizar un uso comercial para los locales en la primera planta del Condominio Parkside. Además, ordenó armonizar la discrepancia existente entre la escritura matriz y el plano en el Registro de la Propiedad para que los locales

permanecieran como áreas de recreación comunales. De esta sentencia los esposos Ugarte-Domenech acudieron ante este Tribunal.

En *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp., supra*, resolvimos que los locales en controversia pertenecen al Consejo de Titulares por ser áreas recreativas de carácter comunal. Con relación al reclamo de que los esposos Ugarte-Domenech eran terceros registrales, estimamos que: cualificaban como terceros civiles de un derecho real inscrito; obraron conforme a los asientos del Registro de la Propiedad; fue un negocio intervivos, a título oneroso y cuya validez no fue cuestionada; y que la inscripción de las fincas provocó que el Registro de la Propiedad fuera inexacto. **No obstante, indicamos que en aquella etapa de los procedimientos estábamos imposibilitados de determinar si hubo o no buena fe de los esposos Ugarte-Domenech por faltar prueba para dirimir el conocimiento de éstos sobre las inconsistencias en el Registro de la Propiedad. Resolvimos, además, que la adjudicación del caso mediante sentencia sumaria los privó de su derecho a presentar prueba sobre su alegación de buena fe.** En consecuencia, revocamos la sentencia recurrida y devolvimos el caso para que las partes pudieran presentar la prueba pertinente sobre la buena fe de un tercero registral.

Conforme a lo ordenado por este Foro, el tribunal de instancia celebró una vista evidenciaria el 15 de noviembre de 1995. Durante la vista el Consejo de Titulares interrogó al señor Ugarte y, además, sometió en evidencia varios fragmentos de una deposición tomada a éste. Por su parte, el señor Ugarte solicitó la desestimación de la demanda aduciendo que la prueba presentada no había derrotado la presunción de buena fe que le cobijaba como tercero registral. Según surge de las determinaciones de hecho del foro de instancia, el señor Ugarte era prestamista desde antes de 1960 y a la fecha del otorgamiento de las hipotecas sobre los locales en controversia había concedido préstamos en exceso de $1,000,000.00. Éste había adquirido las destrezas necesarias para llevar a cabo investigaciones en el Registro de la Propiedad y, además, contaba con un abogado encargado de hacer los estudios de título antes de conceder los préstamos.

Mediante resolución de 22 de abril de 1996 el foro de instancia denegó la desestimación solicitada por entender que la presunción de buena fe había sido controvertida. Determinó que la evidencia demostró que el señor Ugarte debió percatarse del carácter comunal de los locales al examinar los asientos del Registro de la

Propiedad y citó a las partes para la continuación de los procedimientos.[1]

El 22 de abril de 1997 el Consejo de Titulares presentó una moción de sentencia sumaria en la que alegó que de la prueba presentada, así como de las constancias registrales, surgía que el señor Ugarte debía conocer el carácter comunal de los locales y, por tanto, no tenía la buena fe de un tercero registral. El 21 de agosto de 1997 el tribunal de instancia emitió sentencia sumaria parcial en la que determinó que el señor Ugarte carecía de buena fe al momento de la inscripción de las hipotecas y, por ende, no podía ser considerado tercero registral. Ordenó al Registrador corregir cualquier discrepancia entre el plano y la escritura matriz y concedió término a las partes para llevar a cabo descubrimiento de prueba sobre los daños, si alguno, ocasionados por la sucesión Ugarte.

La sucesión Ugarte y la señora Domenech apelaron el anterior dictamen ante el Tribunal de Apelaciones[2] alegando que el foro de instancia incidió al resolver sumariamente la controversia referente a la buena fe.

---

[1] La vista fue suspendida en dos (2) ocasiones debido a la enfermedad y posterior fallecimiento del señor Ugarte. Luego de llevar a cabo la sustitución correspondiente, el tribunal *a quo* la señaló para el 28 y 29 de agosto de 1997.

[2] Denominado anteriormente Tribunal de Circuito de Apelaciones por el Plan de Reorganización de la Rama Judicial, Ley Núm. 1 de 28 de julio de 1994, que fue derogado por la Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003.

Por otro lado, M.G.I.C. Financial y M.G.I.C. Equities también presentaron una solicitud de *certiorari* ante el foro apelativo intermedio. Consolidados y acogidos ambos recursos como *certiorari*, el tribunal apelativo los desestimó mediante resolución de 26 de mayo de 1999. **Así las cosas, la sentencia sumaria parcial del foro de instancia relacionada con la tercería registral advino final y firme y el litigio continuó respecto a los daños reclamados a la sucesión Ugarte.**

El 16 de junio de 1999 el tribunal de instancia ordenó a las partes informar sobre los asuntos que se encontraban pendientes de adjudicación. El Consejo de Titulares planteó que faltaba fijar la responsabilidad de M.G.I.C. Financial, M.G.I.C. Equities, el señor De Jesús, la sucesión Ugarte y la señora Domenech como poseedores de mala fe. Además, reclamó la cantidad de $2,000,000.00 por los frutos alegadamente percibidos por la sucesión Ugarte al arrendar, hipotecar o enajenar los locales. A su vez, la sucesión Ugarte indicó que el único asunto pendiente era determinar si procedía la concesión de los daños solicitados por el Consejo de Titulares.

Luego de varios incidentes procesales, el tribunal de instancia emitió una resolución el 25 de abril de 2000 en la que concluyó que quedó probada la mala fe de los esposos Ugarte-Domenech ya que el defecto en el título surgía del Registro de la Propiedad, no obstante, entendió que no procedía aplicar las disposiciones

referentes a la posesión de mala fe ya que no se podía variar el uso de los locales. Por lo anterior, el foro sentenciador estimó que era improcedente la reclamación del Consejo de Titulares por los frutos dejados de percibir. Dicho tribunal aplicó, además, la doctrina de enriquecimiento injusto y resolvió que la sucesión debía devolver los frutos efectivamente percibidos hasta la fecha de entrega de los locales el 8 de diciembre de 1999, además de abonar el interés legal y responder por el menoscabo sufrido por los locales. Finalmente, ordenó el nombramiento de un perito para determinar la suma a pagar a los fines de restituir los frutos percibidos por la sucesión.[3]

El Consejo de Titulares presentó una moción de reconsideración en la que alegó que el foro sentenciador incidió al negarse a aplicar la doctrina de posesión de mala fe y que, además, procedía imponer responsabilidad solidaria a M.G.I.C. Equities, M.G.I.C. Financial, el señor De Jesús, Paradise Gardens, Villa Edamorga y la sucesión Ugarte. En resolución de 27 de junio de 2000 el tribunal de instancia reconsideró y resolvió que procedía aplicar la doctrina de posesión de mala fe a las circunstancias del presente caso. A pesar de determinar que la sucesión Ugarte fue poseedora de mala fe,

---

[3] Cabe señalar que el tribunal de instancia no especificó la responsabilidad, si alguna, de M.G.I.C. Financial, M.G.I.C. Equities, el señor De Jesús, Paradise Gardens o Villa Edamorga.

desestimó la reclamación del Consejo de Titulares por los frutos dejados de percibir ya que éste no demostró que medió el consentimiento unánime de los condóminos para cambiar el uso de los locales de uno recreativo, que como regla general no genera ganancias, a un uso comercial. Debido a que tal consentimiento no fue demostrado, el tribunal consideró que los condóminos nunca tuvieron la intención de utilizar los locales como áreas comerciales, sino como áreas recreativas y, por ende, no podían recobrar los frutos dejados de percibir por un uso comercial al que ellos se opusieron reiteradamente ya que ello sería ir contra sus propios actos. De esta forma desestimó la reclamación instada por el Consejo de Titulares por la cantidad de $2,000,000.00 ya que esta cuantía no correspondía con el uso recreativo de dichas áreas.

De la anterior determinación recurrieron la sucesión Ugarte y el Consejo de Titulares ante el Tribunal de Apelaciones. La sucesión señaló que el foro primario incidió al resolver que por carecer de la buena fe necesaria para ser tercera registral, se había convertido en poseedora de mala fe. Por su parte, el Consejo de Titulares adujo que el tribunal de instancia erró al determinar que no tenía derecho a recobrar los frutos dejados de percibir por el uso comercial de los locales, a pesar de haber resuelto que la sucesión Ugarte era poseedora de mala fe.

En sentencia de 29 de diciembre de 2000 el foro apelativo dictaminó que por estar el inmueble sometido al régimen de propiedad horizontal, podía imputársele a la sucesión Ugarte el conocimiento de las constancias del Registro de la Propiedad a los fines de determinar si era poseedora de mala fe. A la luz de lo anterior, resolvió que, en efecto, la posesión de mala fe quedó demostrada. Con relación a los frutos, aunque rechazó la aplicación de la doctrina de los actos propios, determinó que el Consejo de Titulares pudo haber percibido unos frutos mayores a los que comúnmente produciría el uso de los locales para fines recreativos. Señaló el foro apelativo que el Consejo de Titulares pudo haber conservado dicho uso recreativo y, además, pudo haberlos arrendado para actividades, por lo que el canon podía coincidir con el correspondiente a un uso comercial. En consecuencia, responsabilizó a la sucesión Ugarte a pagar por los frutos dejados de percibir por el Consejo de Titulares en virtud de un uso comercial. Respecto a M.G.I.C. Financial, determinó que ésta debió conocer las discrepancias que surgían del Registro de la Propiedad, por lo que era poseedora de mala fe y debía pagar junto con la sucesión los frutos dejados de percibir por el Consejo de Titulares. Finalmente, devolvió el caso al tribunal de instancia para que éste determinase a cuánto ascendían los frutos que debían abonarse al Consejo de Titulares y para la continuación de los procedimientos

relacionados con la responsabilidad, si alguna, de M.G.I.C. Equities, Paradise Gardens, Villa Edamorga, el Estado Libre Asociado de Puerto Rico, el Registrador de la Propiedad, la Junta y A.R.P.E.

Inconformes, la Sucesión Ugarte, M.G.I.C. Financial y M.G.I.C. Equities acudieron ante nos alegando que incidió el tribunal apelativo:

> [A]l resolver que por estar los locales ubicados en una propiedad sujeta al régimen de propiedad horizontal se puede imputar al poseedor el conocimiento de las constancias del Registro para propósitos de la liquidación del estado posesorio aunque el Artículo 363 no requiera al poseedor consultar el Registro.

> [A]l resolver que la Sucesión Ugarte debe compensar al Condominio Parkside por los frutos que el Condominio hubiera podido percibir de los locales como áreas comerciales.

> [Al] incluir a M.G.I.C. [Financial] como poseedor de mala fe en lo que concierne a la determinación de los alegados daños a resarcirse por frutos que alegadamente se podían haber percibido.[4]

---

[4] Aunque los señalamientos de error antes mencionados disponen de los recursos ante nos, M.G.I.C. Equities y M.G.I.C. Financial, además, aducen que erró el foro apelativo: al dictaminar que procede aplicar una fórmula de cálculo de valor de una propiedad comercial en forma totalmente especulativa e infundada; al no revisar el expediente que obraba en su poder y determinar que este Tribunal decidió que lo único que había que dilucidar era la buena o mala fe de la sucesión Ugarte; al incluir como responsables, en adición a la sucesión Ugarte y a M.G.I.C. Financial, al Estado Libre Asociado de Puerto Rico, la Junta y A.R.P.E.; al descartar las inconsistencias en las alegaciones, teorías y evaluaciones de daños del Consejo de Titulares; al no dar peso a la evidencia presentada y cotejar que jamás se presentó evidencia alguna a los efectos que la desarrolladora había hecho representaciones de que las áreas en disputa eran recreativas; y al fundamentar su decisión en el Art. 451 del proyecto del Código Civil

Acordamos consolidar y expedir el auto solicitado. Las partes han comparecido y con el beneficio de sus argumentos procedemos a resolver.

II

Por estar relacionados, discutiremos conjuntamente los errores primero y tercero, los cuales requieren que determinemos si la sucesión Ugarte y M.G.I.C. Financial son poseedoras de mala fe. En síntesis, la sucesión alega que la determinación a los efectos que ésta no cumplía con el requisito de buena fe para ser considerada tercera registral, no equivale a que sea poseedora de mala fe ya que los requisitos para adjudicar la buena fe en uno y otro caso difieren.

El requisito de la buena fe es una exigencia general de nuestro ordenamiento jurídico. *Velilla v. Pueblo Supermarket, Inc.*, 111 D.P.R. 585, 586 (1981). En el ámbito de los derechos reales, la buena fe predomina en todos los supuestos en términos de un *desconocimiento* o *ignorancia*. Manuel Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Tomo VII, Vol. 4, Ed. Revista de Derecho Privado, 1999, pág. 475. A tenor con el Art. 363 del Código Civil, 31 L.P.R.A. sec. 1424,

_____

español de 1951, el cual no llegó a formar parte del Código Civil de Puerto Rico de 1902.

"[s]e reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide. Se reputa poseedor de mala fe al que se halla en el caso contrario".[5]  "La buena fe se presume siempre, y al que afirma la mala fe de un poseedor corresponde la prueba". 31 L.P.R.A. sec. 1425.  Quien alega la posesión de mala fe, debe destruir la mencionada presunción con prueba suficiente y, por ser ésta una cuestión de hecho, es al tribunal a quien le corresponde declarar en última instancia si en realidad existe la mala fe. *Jiménez v. Reyes*, 146 D.P.R. 657, 664 (1998); Jaime Santos Briz, *Derecho civil*, Tomo II, Ed. Revista de Derecho Privado, 1973, pág. 42.

Anteriormente hemos señalado que el citado Art. 363, *supra*, define la buena fe desde su aspecto negativo. *Cedó v. Laboy*, 79 D.P.R. 788, 792 (1956).  La posesión de buena fe es una especie de la posesión civil, caracterizada por la concurrencia de los siguientes requisitos: (1) título o acto jurídico que aparente una legítima adquisición; (2) vicios en dicho título o modo; e (3) **ignorancia de tales vicios por el poseedor**.  Véanse *Id.*; José Castán Tobeñas, *Derecho civil español, común y foral*, Tomo 2, Vol. I, 14ta ed., Reus, pág. 687.

---

[5]  El concepto posesión, en su acepción de derecho real, se define como aquella "que tiene apariencia de dominio; es la posesión de una persona, como si fuera el titular de la cosa o derecho".  Federico Puig Peña, *Compendio de Derecho civil español*, Vol. II, 3era ed. rev., Eds. Pirámide, pág. 349.

En el caso de autos no cabe duda que la sucesión Ugarte satisface los primeros dos (2) elementos de la buena fe, ya que ésta adquirió los locales del Condominio Parkside de su causante, el señor Ugarte, quien, a su vez, los adquirió mediante venta judicial junto a su esposa, la señora Domenech, y la sociedad legal de gananciales compuesta por ambos.[6]  Dicho título estaba viciado, pues los locales adquiridos eran realmente áreas recreativas de carácter comunal y no áreas comerciales. La titularidad de éstos, conforme a lo resuelto por el foro de instancia, corresponde al Consejo de Titulares, pues la sucesión no es tercera registral.[7]  Ahora bien, el Consejo de Titulares aduce que la sucesión tenía conocimiento del vicio en su título, pues las discrepancias entre la escritura matriz y el plano surgían del Registro de la Propiedad y que, por ende, es poseedora de mala fe.  Por su parte, la sucesión alega que ignoraba el vicio ya que, a tenor del Art. 363, *supra*, no le es requerido consultar al Registro de la Propiedad.

---

[6]  La escritura a esos efectos fue otorgada el 15 de diciembre de 1982.

[7]  Es menester indicar que la controversia sobre la tercería registral ya fue adjudicada por el foro primario y advino final y firme.  Por lo anterior, la determinación a los efectos que la sucesión no es tercera registral constituye la ley del caso.  Véase *Mgmt. Adm. Servs. Corp. v. E.L.A.*, res. el 29 de noviembre de 2000, 152 D.P.R. _____ (2000), 2000 T.S.P.R. 174, 2000 J.T.S. 189.

Al interpretar el Art. 433 del Código Civil español, equivalente al Art. 363 de nuestro Código Civil, *supra*, la doctrina española indica que éste "cifra la ignorancia determinante de la buena fe en el **desconocimiento** de que en el título o modo de adquirir exista algún vicio que lo invalide". Antonio Hernández Gil, *Obras completas, La posesión*, Tomo 2, Espasa-Calpe, 1987, pág. 173. (Énfasis suplido.) De acuerdo con el profesor Hernández Gil, "[e]l poseedor, en virtud de la ignorancia o impulsado por la creencia, **desconoce lo que realmente es y lo que normativamente corresponde a esa realidad** y, a consecuencia de la buena fe, se produce un efecto jurídico distinto del que correspondería a lo objetivamente dado". *Id.*, pág. 162. (Énfasis suplido.) Por otro lado, el mencionado autor, citando con aprobación al tratadista Amorós Guardiola, indica que sólo constituirá buena fe la ignorancia que responde a un modo de actuar honesto de la persona. "No basta con una creencia equivocada cuando ésta es socialmente condenable, cuando arranca de una **ignorancia inexcusable y 'no diligente'**". *Id.*, pág. 165. (Énfasis suplido.)

De igual forma, el profesor Vélez Torres señala que el Art. 363, *supra*, se refiere a un estado de ignorancia en el poseedor. Además, citando a los tratadistas Diez-Picazo y Gullón, indica que:

> la buena fe del poseedor es una creencia o una convicción de haber adquirido la titularidad del derecho que se está externamente ejercitando

sobre la cosa; que parece estar fundada sobre un elemento sicológico, de creencia o ignorancia, idea que debe ser matizada de acuerdo con los postulados de una concepción ética de la buena fe; que ésta (la buena fe) es la creencia de obrar justamente sin lesionar derechos de otros, por lo que nunca puede fundarse en un error inexcusable. José Ramón Vélez Torres, *Curso de Derecho civil*, Tomo II, Univ. Interamericana de Puerto Rico, 1983, pág. 124.

En síntesis, **la posesión de buena fe exige el desconocimiento del vicio en el título.** Este desconocimiento debe estar fundamentado en una ignorancia de tipo sicológico que, a su vez, se ajuste al principio general de que todas las personas deben obrar sin ocasionar daños a otras. Además, **esa ignorancia no puede estar fundamentada en un error inexcusable**. Por tratarse el caso de autos de un **inmueble sujeto al régimen de propiedad horizontal**, que está reglamentado por una ley especial la cual tiene preeminencia sobre las disposiciones generales del Código Civil, es preciso examinar las características particulares de dicho régimen para estar en posición de pasar juicio sobre si, en efecto, la sucesión Ugarte desconocía el vicio del que adolecía su título.

III

Sabido es que **el régimen de propiedad horizontal está supeditado al requisito de inscripción registral.** En éste, por vía excepcional, la inscripción tiene

carácter constitutivo. Para que exista dicho régimen, tiene que constar inscrito en la sección correspondiente del Registro de la Propiedad. Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958, 31 L.P.R.A. sec. 1291. La ley requiere que se inscriban la escritura matriz –que somete el inmueble al régimen– y, posteriormente, la escritura que genere la primera inscripción de cada apartamento. 31 L.P.R.A. secs. 1292 y 1292a. Además, la legislación exige que se agreguen a las escrituras mencionadas "copias completas y fieles de los planos [del] inmueble o de los planos del apartamiento de que se trate, según los casos, para que queden archivados en el Registro de la Propiedad". 31 L.P.R.A. sec. 1292b.

En *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp., supra*, pág. 553, señalamos que los planos permiten que un comprador o titular conozca la totalidad del edificio, así como su apartamento, para fines de hacer valer sus derechos, por lo tanto, la escritura matriz no es la única fuente de derechos y obligaciones. *Arce v. Carribean* Home *Const. Corp.*, 108 D.P.R. 225, 257–258 (1978).

En nuestro ordenamiento el régimen de propiedad horizontal no solamente entraña la característica de que su inscripción es constitutiva, sino que, además, es un **sistema de características de un catastro**. *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial*

*Corp.*, *supra*, pág. 553 (1991); *García Larrinua v. Lichtig*, 118 D.P.R. 120, 131-132 (1986); *Arce v. Caribbean Home Const. Corp.*, *supra*, págs. 257-258.

> **Teniendo el Registro... las características de un catastro**, la realidad extrarregistral tiene que corresponder con la que surge del Registro. Es por ello que **al comprador de un apartamento de un edificio que está sometido al régimen de la Ley de Propiedad Horizontal se le puede oponer e imputar, por ficción de ley, el conocimiento no sólo de las constancias del Registro en lo referente a la titularidad del mismo, sino que se le imputa el conocimiento de las 'circunstancias particulares'**, tales como cabida o superficie total, del apartamento individual de que se trate. *García Larrinua v. Lichtig, supra*, pág. 133. (Énfasis suplido.)

En el caso de marras la inconsistencia en la clasificación de las áreas surgía de la escritura matriz, en la cual los locales fueron identificados como áreas de servicios comunales, mientras que en los planos se identificaron como áreas recreativas. **Si bien es cierto que, como regla general, el Art. 363, *supra*, no requiere que se consulten los asientos del Registro de la Propiedad para que la posesión sea de buena fe, el caso ante nos está regido por las disposiciones de la Ley de Propiedad Horizontal. Ésta le atribuye al Registro de la Propiedad las características de un catastro, por lo tanto, puede imputársele al adquirente el conocimiento de las constancias que surgen del Registro.** En particular, se le puede imputar conocer los aspectos sobre la titularidad y circunstancias particulares del inmueble, tales como cabida. Lo contrario desvirtuaría la

naturaleza especial del régimen de propiedad horizontal y la premisa del legislador, al reconocerle a éste características de un catastro, de que la realidad extrarregistral corresponde con los asientos registrales.

De lo anterior se puede colegir que **la sucesión –por ficción de ley– tenía conocimiento de la discrepancia en la clasificación de los locales**, circunstancia que afectaba la titularidad de éstos que, como resolvió el foro de instancia, corresponde al Consejo de Titulares por ser áreas comunes recreativas.[8] Resolvemos que actuó correctamente el foro apelativo intermedio al resolver que la sucesión Ugarte es poseedora de mala fe.

Con relación a la determinación a los efectos de que M.G.I.C. Financial es poseedora de mala fe, basta señalar que también puede imputársele el conocimiento del vicio en su título surgido por la discrepancia entre la escritura matriz y los planos del inmueble. Al momento de la adquisición de M.G.I.C. Financial mediante la dación en pago, del Registro de la Propiedad surgía que

---

[8]     Además, es menester considerar que, según surge de las determinaciones de hecho del foro de instancia, el señor Ugarte era prestamista con anterioridad a 1960 y a la fecha del otorgamiento de las hipotecas sobre los locales en el Condominio Parkside había concedido préstamos en exceso de $1,000,000.00. El tribunal sentenciador determinó que éste había desarrollado las destrezas necesarias para llevar a cabo investigaciones en el Registro de la Propiedad y contaba con abogados a quienes les encomendaba el examen de los asientos registrales. Más aún, la sucesión en su alegato acepta que tanto su causante como los abogados de éste examinaron en varias ocasiones las constancias del Registro de la Propiedad. Alegato de la sucesión Ugarte, pág. 8.

mientras en la escritura matriz los locales estaban clasificados como áreas de servicios comunales, en los planos se especificaron como áreas recreativas. A tenor de las normas antes esbozadas sobre la posesión y la naturaleza catastral del régimen de propiedad horizontal, resolvemos que M.G.I.C. Financial es poseedora de mala fe.

IV

Luego de determinar que tanto la sucesión Ugarte como M.G.I.C. Financial son poseedoras de mala fe, debemos examinar el segundo error relacionado con los frutos que deben restituirse al Consejo de Titulares. Sobre este particular, el Tribunal de Apelaciones resolvió:

> Las áreas en cuestión eran propiedad del Condominio. Eran elementos comunes generales voluntarios, que el Condominio podía utilizar directamente, podía arrendar, conservando el uso recreativo, ya fuese como un arrendamiento incidental para actividades o como un arrendamiento de tipo comercial, conservando el uso como área recreativa. Podía, en efecto, como determinó el Tribunal de Primera Instancia en la resolución recurrida, haber variado el uso con la aprobación unánime de todos los condóminos. En otras palabras, el canon correspondiente a dichas áreas, durante esos años no es meramente el canon correspondiente a un canon residencial, donde el valor del alquiler sería menor. No se trata de un apartamento. Dichas áreas pudieron haber brindado para el propietario legítimo –el Condominio– un canon que realmente podría coincidir con uno correspondiente a un uso comercial, en términos de producción de frutos.

Sentencia del Tribunal de Apelaciones de 29 de diciembre de 2000, pág. 35.

En vista de lo anterior, el foro intermedio ordenó a la sucesión Ugarte pagar al Consejo de Titulares los frutos que éste pudo haber percibido de acuerdo con un canon de tipo comercial. La sucesión alega que incidió el foro apelativo ya que es especulativo calcular la compensación de los frutos que el Condominio Parkside pudo haber percibido por los locales como áreas comerciales.

El Art. 384 del Código Civil, 31 L.P.R.A. sec. 1470, impone al poseedor de mala fe la obligación de abonar "los frutos percibidos y los que el poseedor legítimo hubiere podido percibir".[9] Además, dispone que el poseedor de mala fe podrá ser indemnizado por los gastos necesarios hechos para la conservación del bien. La citada disposición tiene carácter de penalidad civil, cuyo objetivo es castigar la mala fe del poseedor por haber impedido al propietario el legítimo goce y disfrute de su propiedad. *Capó v. A. Hartman & Cía.*, 57 D.P.R. 196, 205 (1939). Con relación a los frutos que el poseedor legítimo hubiese podido percibir, hemos señalado

_____

[9] Precisa señalar que sobre los frutos percibidos no existe controversia ya que el foro de instancia, mediante resolución de 25 de abril de 2000, determinó que la sucesión Ugarte está obligada a abonar al Consejo de Titulares los frutos efectivamente percibidos por ésta. Además, ordenó el nombramiento de un perito a los fines de determinar la cuantía de tales frutos. Esta determinación no fue cuestionada ante el foro intermedio ni ante este Tribunal.

que **son los que "debiera haber producido la cosa"**. *Id.*

(Énfasis suplido.)

De acuerdo con el tratadista Hernández Gil, la determinación de los frutos que el poseedor legítimo hubiese podido percibir, aunque está concebida en términos subjetivos, no siempre es susceptible de llevarse a cabo de una manera sencilla.

> Si el vencedor en la posesión está consagrado a una explotación o empresa concerniente al destino de la cosa objeto de la contienda –y más aún si la propia cosa ha sido antes explotada por él– no cabe duda que la determinación de la cuantía a satisfacer habrá de hacerse sobre la base del régimen personal de la gestión económica desenvuelta por aquel a quien se reintegra la posesión de la cosa. ... Si, por el contrario, falta esa actividad personal o profesional del legítimo poseedor, la determinación de los frutos podidos percibir habrá de hacerse con base en una explotación normal. Hernández Gil, *supra*, pág. 332.

De otra parte, tanto los frutos percibidos como los que el poseedor legítimo hubiese podido percibir deben ser objeto de prueba. *Costas v. G. Llinas & Co., S. en C.*, 66 D.P.R. 730, 750 (1946).

La sucesión Ugarte adquirió los locales en controversia para darles un uso comercial. No obstante, el verdadero titular de éstos, el Condominio Parkside, pretende darles un uso recreativo. De ordinario las áreas recreativas no producen los mismos frutos que las áreas destinadas a un uso comercial. Sin embargo, ello no es óbice para que, aunque en una cuantía menor, el Condominio Parkside, pudiese haber obtenido frutos como

consecuencia del uso recreativo de los locales, por ejemplo, mediante el cobro de cuotas a los usuarios para fines de limpieza o para asegurar la disponibilidad de los locales. Entendemos que tal solución no es especulativa, sino que, por el contrario, toma en consideración los métodos administrativos que frecuentemente ponen en vigor los consejos de titulares de los inmuebles sometidos al régimen de propiedad horizontal para permitirles a los condóminos llevar a cabo sus actividades recreativas.

En consecuencia, actuó correctamente el foro intermedio al resolver que la sucesión Ugarte y M.G.I.C. Financial deben abonar al Consejo de Titulares los frutos dejados de percibir por el uso de los locales.

V

Por los fundamentos antes expuestos, confirmamos la sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

MIRIAM NAVEIRA MERLY
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio Parkside

    Demandantes recurridos

        v.                          CC-2001-109
                                    CC-2001-111
Villa Edamorga, Inc. and Co.,     (cons.)
*et al.*

    Demandadas todas y
    peticionarios los miembros
    de la Scn. Ugarte

SENTENCIA

San Juan, Puerto Rico a 19 de mayo de 2004

       Por los fundamentos expuestos en la Opinión que antecede, se confirma la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

       Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente sin opinión escrita.

                         Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo