*978 TEXTO COMPLETO DE LA SENTENCIA
I
El 21 de septiembre de 1998, el Huracán Georges pasó por Puerto Rico. Como resultado de este fenómeno atmosférico, varios de los municipios de la Isla se afectaron. En particular, la parte apelante Municipio de Gurabo fue declarado zona de desastre, lo que conllevó la intervención de la agencia federal para el manejo de emergencias (Federal Emergency Management Agency o “FEMA”).
Debido a la gran cantidad de escombros producidos por el Huracán, el Municipio se dio a la tarea de reunirse con varias corporaciones dedicadas a la construcción para la limpieza y disposición de estos escombros. El Municipio se reunió primero con el personal de FEMA. En la reunión, FEMA indicó que el Gobierno Federal proveería fondos para estos trabajos.
Los días 26 y 27 de septiembre de 1998 se realizaron reuniones en la Casa Alcaldía del Municipio entre los funcionarios municipales y varias empresas que fueron posteriormente contratadas para la limpieza de los escombros. Participaron la corporación apelada Bassani Sans Contractors, Inc. (“Bassani”), [1] Quality Chem, Inc. (“Quality Chem”) y Delfisa Development Corp. (“Delfisa”). Bassani estuvo representada por su Project Manager, Narciso Costa Alfaro.
Luego de inspeccionar los daños, los representantes del Municipio y de las tres compañías estimaron que había que recoger cerca de 400,000 yardas cúbicas de desperdicios. Durante la reunión, los funcionarios del Municipio expresaron que FEMA les adelantó que el Gobierno Federal aportaría 10.8 millones de dólares para cubrir el costo del recogido y acarreo de los escombros. Se acordó dividir por barrios y yardas los trabajos entre las tres compañías para evitar que se duplicaran los esfuerzos. A Quality Chem, que tenía más equipo que las otras empresas, se le asignó el recogido de 200,000 yardas cúbicas, mientras que Bassani y Delfisa se comprometieron a recoger 100,000 yardas cúbicas, cada una.
El Municipio procedió posteriormente a otorgar contratos con Bassani, Quality Chem y Delfisa para el recogido de escombros. Los contratos hacían claro que el pago de los servicios dependía de la aportación económica del Gobierno Federal. No existe controversia de que el Municipio carecía de fondos para el pago de los contratos y que no se presupuestó cantidad alguna por parte del Municipio para cubrir esta obligación.
El 28 de septiembre de 1998, el Municipio y Bassani otorgaron el contrato núm. 99-000051 mediante el cual se acordó la disposición de escombros de varios de los barrios y sectores del Municipio por una cantidad máxima de $2,700,000.00. El contrato aclaraba, en su Cláusula Sexta, que:

"Este contrato será pagado[] con fondos de emergencia destinados para estas propuestas ... por la agencia 
*979
federal F.E.M.A. según declaraciones del Presidente de E.U. de Norte América y del Gobierno de P.R. ”

El 16 de octubre de 1998, el Municipio y Bassani suscribieron un segundo contrato, núm. 99-0000098, mediante el cual se acordó el recogido de escombros hasta un máximo de 100,000 yardas cúbicas por la cantidad de $2,300,000.00.
Al igual que en el contrato anterior, el acuerdo estipuló que el pago dependía de la aportación de fondos por FEMA. En su Cláusula Tercera se disponía que “el Municipio accede a honrar y pagar todas las facturas recibidas del Contratista, una vez FEMA autorice el Proyecto y autorice el desembolso. ”
Pocas semanas después de la firma de los contratos, el 13 de noviembre de 1998, Bassani otorgó un acuerdo con la corporación apelada Money’s Peoples Inc. (“Money’s”), mediante el cual, a cambió de ciertas sumas adelantadas como préstamo, le cedió a Money’s sus acreencias contra el Municipio. [2]
Luego de suscritos los contratos con Bassani y las otras compañías, los contratistas comenzaron la tarea del recogido y acarreo de los escombros. El trabajo fue supervisado por el personal del Municipio y el de FEMA, quienes impartieron instrucciones directas sobre su realización.
Cada vez que se llenaba un camión de escombros, se levantaba una “boleta” en la que constaba la cantidad de escombros recogidos, así como el número de licencia del conductor del camión y el número de tablilla. La boleta estaba firmada por el conductor del camión, el funcionario de FEMA y del Municipio.
La información de la boleta era ingresada diariamente en una bitácora, y posteriormente remitida al Director de Finanzas del Municipio y al Director de Obras Públicas. El propósito era corroborar la información que proveía Bassani con la contenida en la bitácora. Una vez culminaba el proceso de facturación de Bassani al Municipio, este último refería las certificaciones a FEMA para su aprobación final.
El trámite interno seguido por el Municipio para el procesamiento de las facturas era el siguiente: (i) La certificación era sometida por el contratista al Municipio, (ii) La certificación era remitida a la atención del Sr. Mario Roque, Director de Obras Públicas del Municipio; (iii) Este último corroboraba y acreditaba, como supervisor de los trabajos en el campo, que los trabajos se hubiesen realizado, (iv) Posteriormente, las facturas eran referidas al procedimiento pre-intervención y reconciliadas con las boletas y contra la bitácora de control, (v) Finalmente, se procedía a expedir el correspondiente comprobante de desembolso.
El Municipio nunca cuestionó las facturas que fueron sometidas por Bassani.
Luego de comenzados los trabajos, FEMA realizó una auditoría de los documentos que se estaban preparando. La prueba refleja que una funcionaría de FEMA solicitó a Bassani, de manera informal, el original de todas las boletas. Aunque Bassani conoció que FEMA estaba inspeccionando esta documentación, no se le informó que se estuviera realizando una auditoría. El Municipio tampoco le notificó a Bassani de la auditoría.
Mientras la auditoría se estaba llevando a cabo, los funcionarios de FEMA y del Municipio le requirieron a Bassani que aumentara el ritmo de sus servicios. Bassani duplicó su capacidad de camiones de 15 metros cúbicos a 30 metros cúbicos.
El Municipio, según hemos indicado, nunca cuestionó el trabajo realizado por Bassani. A Bassani se le hicieron pagos parciales por $1,196,988.40 por el trabajo realizado. A la fecha de los hechos, quedaban sin pagar facturas por $985,372.60.
El 3 de abril de 2000, las autoridades federales emitieron su informe de la auditoría realizada sobre las obras *980 de recogido llevadas a cabo por Bassani, Quality Chem y Delfisa para el Municipio de Gurabo. El informe cuestionaba las facturas sometidas por los contratistas.
Según el informe, Delfisa Quality Chem y Bassani sometieron facturas ascendentes a $5,098,248.00 por el recogido de 188,824 yardas cúbicas, mientras que el Cuerpo de Ingenieros de los Estados Unidos (“USACE”) estableció que sólo se recogieron 73,606 yardas cúbicas, para un total de $1,987,362. El informe expresaba que en la auditoría se detectó que Quality Chem y Bassani sometieron facturas por los mismas boletas de carga (“[t]he same load tickets were included in contractor billings of both Quality Chem and Bassani Sans Contractors”). En el informe se observó que un examen de los documentos presentados para 85 camiones reflejaba que en 71 de ellos, las facturas presentadas no coincidían con la carga reportada. El informe concluyó que la información provista no era confiable (“[t]he data provided was inaccurate, providing no reliability on their internal control and grant administration process”).
El informe expresó que varios contratos, incluyendo el 99-0000098 suscrito con Bassani, no reflejaban una partida de fondos asignados, según lo requerido por el Contralor de Puerto Rico (“did not specify the fund accounts to pay the work realized by the contractors as required by the Office of the Comptroller”), lo que resultó en pagos en exceso, que en el caso de Bassani, fue de $7,952. El informe señaló que tampoco se solicitaron varios documentos requeridos bajo la Ley local. Concluía que:

“The contracts could be invalid if the documents are not presented because the Municipality and its contractors must be complied with the state laws and regulations. ...

The Municipality’s Management did not exercise the due care to include all required clauses in the contracts nor had an efficient and effective control to request the above stated documents to the contractors prior to the signing of the contracts. ”

En su informe, FEMA determina que no se habrían de desembolsar fondos federales en exceso de la certificación presentada por las autoridades federales, por lo que no se pagarían las sumas reclamadas por los contratistas:

“The PA program FEMA will not reimburse the cost above USACE certifications ... Thus, the difference of the projects’ cost between the Municipality and the USACE of $3,110,886 are questioned costs. These costs will have to be paid to the contractor with Municipality’s funds... The Municipality’s Management has not established proper controls over the grant administration and eligible costs. ”

Como consecuencia del informe de auditoría, FEMA desobligó los fondos de asistencia al Municipio con relación al recogido de escombros por el paso del huracán. El Municipio no notificó a Bassani del informe.
Varios funcionarios del Municipio hicieron gestiones ante FEMA para cuestionar los hallazgos. El Municipio contrató un experto para que lo asistiera en esta tarea. El Sr. Radamés Costa Quevedo, de Bassani, participó en estas reuniones informales. FEMA, sin embargo, se rehusó a modificar su informe. El Municipio tampoco solicitó una revisión formal de la decisión de la agencia federal.
Ante la negativa de FEMA de pagar por las facturas pendientes, el Municipio también dejó de pagar a sus contratistas. Los tres contratistas presentaron acciones independientes contra el Municipio para el cobro de lo adeudado.
Quality Chem demandó al Municipio ante la Sala Superior de Caguas del Tribunal de Primera Instancia, caso núm. EAC2000-0485. El 21 de marzo de 2003, el Tribunal de Primera Instancia emitió sentencia y denegó la demanda. Concluyó que la aportación de fondos federales por FEMA constituía una condición expresa en el *981 contrato, y que al no cumplirse esta condición, el Municipio no venía obligado a pagar. Este dictamen fue apelado ante este foro, KLAN2003-00653, y confirmado mediante sentencia emitida el 25 de agosto de 2003.
Por su parte, Delfisa también demandó al Municipio ante la Sala Superior de Caguas, EAC1999-00526. Mediante sentencia emitida el 10 de octubre de 2003, el Tribunal declaró con lugar la demanda. Este dictamen fue apelado por el Municipio ante este Tribunal, caso KLAN-2003-00153, y confirmado por este foro mediante sentencia emitida el 30 de junio de 2004.
En septiembre de 1999, Money's instó la presente demanda contra Bassani y contra el Municipio ante el Tribunal de Primera Insancia, Sala Superior de San Juan, para el cobro de la acreencia que le fue cedida. Las partes demandadas negaron las alegaciones. Bassani presentó una demanda de co-parte contra el Municipio para que éste pagara lo reclamado.
Luego de otros trámites procesales, incluyendo la celebración de una vista en su fondo, el 19 de marzo de 2008, el Tribunal de Primera Instancia emitió la sentencia apelada y declaró con lugar la demanda.
En su sentencia, el Tribunal de Primera Instancia concluyó que, de acuerdo al contrato suscrito entre las partes, el pago de los servicios prestados por Bassani estaba condicionado al desembolso de los fondos asignados por FEMA. El Tribunal consideró, sin embargo, que el Municipio actuó de forma inconsistente con la buena fe al no notificar a Bassani de la auditoría realizada por las autoridades federales.
La ilustrada Sala expresó:

“Al examinar el contenido de los contratos Núm. 99-000051 y 99-000098, resulta claro que la letra clara de los mismos condicionaba el pago de los servicios prestados por Bassani al correspondiente desembolso de los fondos asignados por FEMA. Por consiguiente, nos corresponde determinar si, desobligados los fondos federales asignados por FEMA para pagar por los servicios rendidos por el recogido y disposición de los escombros producidos por el Huracán Georges, el Municipio de Gurabo quedó libre de la obligación de pago por dichos servicios. ”

Empecemos por establecer claramente que el Municipio de Gurabo quedó obligado no sólo 1 cumplimiento de lo expresamente pactado, sino a todas las consecuencias que, según su naturaleza, fueran conforme a la buena fe. ... Por tanto, los imperativos del principio de la buena fe contractual imponían sobre el Municipio de Gurabo el deber de informar a Bassani sobre la existencia de una auditoría federal que podría poner en peligro los fondos para pagar sus servicios, de manera que Bassani dejara de proveer los servicios que no le serían satisfechos o defendiera sus intereses ante FEMA.
Este silencio es contrario a los principios básicos de la buena fe contractual...
El Tribunal concluyó que el Municipio venía obligado a pagar a Bassani por el trabajo realizado, aunque se hubieran desobligado los fondos de FEMA. El Tribunal declaró con lugar la demanda y condenó al Municipio a pagarle a Bassani $985,372.60.
Ambas partes recurrieron separadamente del dictamen del Tribunal de Primera Instancia. En el recurso KLAN-2008-00764, el Municipio de Gurabo cuestiona la sentencia emitida por el foro apelado y su conclusión de que el Municipio de Gurabo viene obligado a pagar por las facturas presentadas, aun en la ausencia de los fondos de FEMA.
En el recurso KLAN-2008-00890, Money’s plantea que el Tribunal de Primera Instancia erró al no imponer intereses sobre la suma adeudada, por concepto de mora.
*982 Mediante resolución emitida el 20 de junio de 2008, ordenamos la consolidación de los recursos. Habiéndose perfeccionado éstos, procedemos a resolver.
II
En su recurso, el Municipio de Gurabo plantea que el Tribunal de Primera Instancia erró al declarar con lugar la demanda.
La facultad de un municipio para obligar el pago de fondos públicos, según se conoce, está limitada a que se sigan los procedimientos establecidos por la Ley. Cordero Vélez v. Municipio de Guánica, 170 D.P.R. _ (2007), 2007 J.T.S. 29, a la pág. 863; Colón v. Municipio de Arecibo, 170 D.P.R. _ (2007), 2007 J.T.S. 68, a la pág. 1162; Lugo v. Municipio de Guayama, 163 D.P.R. 208, 215-216 (2004); Ríos v. Municipio de Isabela, 159 D.P.R. 839, 845-846 (2003); Las Marías v. Mun. de San Juan, 159 D.P.R. 868, 875 (2003).
Estos requisitos surgen de la Ley de Municipios Autónomos, véase, en particular, 21 L.P.R.A. sees. 4351-4367, y del Reglamento Núm. 7539 aprobado el 18 de julio de 2008 por la Oficina del Comisionado de Asuntos Municipales, sobre la Administración Municipal.
Entre otros requisitos, se exige que todo contrato obre por escrito, Ríos v. Mun. de Isabela, 159 D.P.R. a la pág. 845, que la obligación esté debidamente presupuestada y que se hayan asignado los fondos correspondientes para pagarla, 21 L.P.R.A. see. 4354 (Supl. 2008); Colón v. Municipio de Arecibo, 2007 J.T.S. 68, a la pág. 1163; Ocasio v. Alcalde de Maunabo, 121 D.P.R. 37, 55 (1988); Morales v. Municipio de Toa Baja, 119 D.P.R. a las págs. 691-692.
Estos requisitos se extienden a contratos para el recogido de escombros. Compárese, Ríos v. Municipio Isabela, 159 D.P.R. a la pág. 846. No pueden ser dispensados meramente porque se invoque una situación de emergencia. Ríos v. Municipio de Isabela, 159 D.P.R. a la pág. 846; Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1007-1008 (1994). [3]
Su incumplimiento conlleva la nulidad radical de cualquier obligación contraída por el Municipio. Ríos v. Municipio de Isabela, 159 D.P.R. a la pág. 846; Las Marías v. Mun. de San Juan, 159 D.P.R. a la pág. 874; Fernández & Gutiérrez v. Mun. de San Juan, 147 D.P.R. 824, 830-831 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. a la pág. 1007; Ocasio v. Alcalde de Maunabo, 121 D.P.R. a la pág. 55; Morales v. Municipio de Toa Baja, 119 D.P.R. a las págs. 691-692. [4]
En la situación de autos, según hemos visto, el Municipio de Gurabo no asignó cantidad alguna para el pago de su contrato con Bassani, sino que se acordó expresamente que los servicios de ésta y de los otros contratistas se pagarían mediante fondos federales a ser aportados por FEMA. Esta aportación era una condición de los contratos.
Así lo determinó el Tribunal de Primera Instancia al concluir que “la letra clara de los [contratos] condicionaba el pago de los servicios prestados por Bassani al correspondiente desembolso de los fondos asignados por FEMA. ”
Tratándose de una obligación sujeta a una condición suspensiva, la no disponibilidad de los fondos federales impedía a Bassani, y por ende, a Money's, reclamar su cumplimiento, López v. González, 163 D.P.R. 275, 282-283 (2004); Jarra v. Axxis Corp., 155 D.P.R. 764, 773 (2001); Meléndez v. Jiménez Realty, Inc., 98 D.P.R. 892, 897 (1970); 31 L.P.R.A. see. 3042. Ello resultaba ilegal de todos modos, en ausencia de estos fondos federales, por ser inconsistente con la Ley de Municipios Autónomos, la que requiere que se asignen de antemano las cantidades para responder por las obligaciones contraídas por un municipio.
*983 El Tribunal de Primera Instancia entendió que el Municipio de Gurabo venía obligado de todos modos a pagar por los servicios prestados por Bassani, porque el Municipio no actuó de buena fe al no notificar a Bassani sobre la auditoría realizada por las autoridades federales.
No se discute que, al haber contratado con Bassani, el Municipio de Gurabo venía obligado a actuar de buena fe hacia esa parte. 31 L.P.R.A. sec. 3375; S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713, 725 (2001); Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 170 (1994); Levy v. Aut. Edif. Públicos, 135 D.P.R. 382, 395 (1994); véanse, además, Consejo v. Villa Edamorga, 161 D.P.R. 785, 797 (2004); Berrios v. U.P.R., 116 D.P.R. 88, 98-99 (1985); H.U.C.E. de Ame. v. V. & E. Eng. Const., 115 D.P.R. 711, 716 (1984); Vetilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585, 587-588 (1981).
Ahora bien, no estamos persuadidos de que la omisión del Municipio de comunicar a Bassani la existencia de la auditoría de las autoridades federales sea equiparable a una ausencia de buena fe por parte del Municipio. Lo cierto es que el Municipio no conocía de antemano que el resultado de la auditoría habría de serle adverso.
El informe que obra en autos sobre los resultados de la auditoría, en este sentido, tiene fecha del 3 de abril de 2000, esto es, luego de que Bassani realizara la mayor parte de los trabajos de recogido de escombros. El récord también refleja que aunque el Municipio no solicitó una revisión formal del informe de auditoría, sí realizó gestiones con FEMA para que se modificaran las determinaciones de esta agencia. El Sr. Costa Quevedo, de Bassani, participó en estas reuniones informales.
Debe recordarse que por tratarse de un área de gran interés público, la contratación con entidades gubernamentales, de ordinario, no le aplican los mismos principios de equidad que a las actuaciones de personas privadas. El Tribunal Supremo de Puerto Rico ha advertido, por ejemplo, que en estas situaciones no cabe la invocación del principio de enriquecimiento injusto para justificar el relajamiento de las exigencias que impone la Ley. Colón v. Municipio de Arecibo, 2007 J.T.S. 68, a la pág. 1163; Las Marías v. Municipio San Juan, 159 D.P.R. a la pág. 875; Hatton v. Mun. de Ponce, 134 D.P.R. a la pág. 1010; Plan Bienestar de Salud v. Alcalde de Cabo Rojo, 114 D.P.R. 697, 703 (1983).
Aquellos entes privados que contratan con el Gobierno deben estar avisados de que, si no se cumplen los requisitos que impone la Ley, corren el riesgo de no cobrar por los servicios que rindan. Colón v. Municipio de Arecibo, 2007 J.T.S. 68, a la pág. 1164; Lugo v. Municipio de Guayama, 163 D.P.R. a las págs. 217-218.
En el presente caso, los contratos no contaban con asignación alguna de fondos municipales para pagar por los servicios prestados. Ante la decisión de FEMA de no proveer fondos para el pago de las facturas presentadas por Bassani, entendemos que el Municipio tampoco viene obligado al pago de esta obligación que, según la parte apelada, asciende a casi $1,000,000.
Por los fundamentos antes expuestos, se revoca la sentencia apelada en el caso KLAN-2008-00764. En su lugar, se dicta otra que declare sin lugar la demanda. Se deniega, por académica, la apelación presentada por Money’s en el caso KLAN-2008-00890.
Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 46

1. Según se desprende del récord, Bassani es una corporación dedicada al negocio de la construcción con oficinas *984 principales en San Juan. Para la fecha de los hechos, el presidente de Bassani lo era el Sr. Radamés Costa. La Secretaria de la empresa lo era Cynthia Costa, hermana del primero.

2. La cesión del crédito fue posteriormente notificada al Municipio, el 8 de abril de 1999, con lo que Money’s quedó subrogada en los derechos de Bassani. Radamés Costa también se comprometió solidariamente ante Money’s por las deudas.

3. El Artículo 8.006 de la Ley autoriza a que en situaciones de emergencia, se pueda incurrir en gastos y obligaciones en exceso del 5% del presupuesto del Municipio. 21 L.P.R.A. see. 4356. No estamos en posición de determinar si la contratación con Bassani, por $2,700,000.00, cumpliría con este parámetro.

4. La Ley también exige que el contrato sea remitido a la Oficina del Contralor, Las Marías v. Mun. de San Juan, 159 D.P.R. a la pág. 874. Conforme a la Ley 127 de 31 de mayo de 2004, sin embargo, esta omisión no da base a la nulidad de la obligación, sino que impide a las partes contratantes solicitar el cumplimiento de sus prestaciones. Lugo v. Municipio de Guayama, 163 D.P.R. a las págs. 217-218