EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Blanca Lourdes Mercado Vélez<br><br>Peticionaria<br><br>v.<br><br>Orlando Kent Mercado White y otros<br><br>Recurridos | Certiorari<br><br>2024 TSPR 85<br><br>214 DPR ___ |

Número del Caso: CC-2023-0478

Fecha: 7 de agosto de 2024

Tribunal de Apelaciones:

    Panel Especial

Representante legal de la parte peticionaria:

    Lcdo. Jorge A. Hernandez López

Materia: Derechos Reales – Momento en que el poseedor de un inmueble por título hereditario se convierte en uno de mala fe; derecho del poseedor legítimo al pago de un canon de arrendamiento en concepto de los frutos dejados de percibir durante la posesión de mala fe.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Blanca Lourdes Mercado Vélez | | |
| Peticionaria | | |
| v. | CC-2023-0478 | |
| Orlando Kent Mercado White y otros | | |
| Recurridos | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 7 de agosto de 2024.

En esta ocasión debemos determinar desde qué momento una persona que obtuvo la tenencia de un inmueble por título hereditario es considerada poseedora de mala fe. Lo anterior, cuando esta mantiene la posesión luego de conocer de la existencia de un heredero con mejor título. Además, debemos precisar si bajo el Art. 730 del Código Civil de 2020, 31 LPRA sec. 7875, el poseedor legítimo tiene derecho al pago de una cuantía equivalente a un canon de arrendamiento en concepto de los frutos dejados de percibir durante la posesión de mala fe.

Adelantamos que, luego de examinar el caso de marras, concluimos que el poseedor por título hereditario se convierte en uno de mala fe desde que conoce del vicio en su

título. Además, resolvemos que el valor neto en cánones de arrendamiento debe ser abonado al poseedor legítimo conforme al Art. 730 del Código Civil de 2020, *supra*. Consecuentemente, revocamos al Tribunal de Apelaciones. Siendo ello así, procedemos a exponer los hechos más relevantes.

## I

La controversia de autos versa sobre la tenencia de un apartamento residencial ubicado en el Condominio Condado del Mar en San Juan. Este fue adquirido por el Sr. Luis R. Mercado Correa (señor Mercado Correa o el causante) y la Sra. Elsie M. Cuebas Hernández (señora Cuebas Hernández) el 30 de marzo de 1977.[1]

El 13 de marzo de 2012, la señora Cuebas Hernández falleció y el señor Mercado Correa fue declarado como su heredero universal.[2] Posteriormente, el 27 de abril de 2014, el señor Mercado Correa también murió, por lo que sus sobrinos, los Sres. Bernardo Mercado González y Orlando Arioch Mercado González, fueron declarados sus únicos herederos mediante una *Resolución* emitida por el Tribunal de Primera Instancia el 10 de septiembre de 2014.[3]

El 18 de marzo de 2019, la Sra. Blanca Lourdes Mercado Vélez (señora Mercado Vélez o peticionaria) presentó el Caso Civil Núm. SJ2019CV02709 sobre Sentencia Declaratoria y

---

[1] Apéndice de la Petición de *Certiorari*, págs. 53-54.
[2] *Resolución* del Tribunal de Primera Instancia en el Caso Civil K JV2014-1612, Apéndice de la Petición de *Certiorari*, pág. 55.
[3] *Resolución* del Tribunal de Primera Instancia en el Caso Civil K JV2014-1559, Apéndice de la Petición de *Certiorari*, pág. 56.

Petición de Herencia. En este, reclamó ser la única hija del señor Mercado Correa, por lo que solicitó ser reconocida como heredera a esos efectos.[4] Así las cosas, el 20 de octubre de 2021, el Tribunal de Primera Instancia emitió una *Sentencia Final* mediante la cual dejó sin efecto la Declaratoria de Herederos del causante y concedió la petición de la señora Mercado Vélez.[5]

El 7 de marzo de 2022, la peticionaria presentó el caso de autos, sobre desahucio y cobro de dinero, contra los Sres. Orlando Kent, Marc Arioch y Matthew Reymund, y la Sra. Cynthia Margaretta, todos de apellido Mercado White (recurridos). Alegó que era la dueña del apartamento en el Condominio Condado del Mar y que los recurridos ocuparon la propiedad desde el año 2019 sin su consentimiento.[6] Además, reclamó el pago de cincuenta y ocho mil quinientos dólares ($58,500) por concepto de rentas dejadas de percibir, a razón de mil quinientos dólares ($1,500) mensuales.

El Sr. Orlando Kent Mercado White (señor Mercado White) contestó la Demanda y admitió que la peticionaria le solicitó que desalojara el bien inmueble. No obstante, negó que existiera una deuda por concepto de renta.[7] Expresó, además, que había ocupado el apartamento en concepto de dueño porque su padre había advenido heredero del señor Mercado Correa, asunto que no fue declarado nulo por el tribunal hasta la

---

[4] Durante la tramitación de esta reclamación, el Sr. Orlando Arioch Mercado González falleció y fue sustituido por los recurridos.
[5] *Sentencia* del Tribunal de Primera Instancia en el Caso Civil Núm. SJ2019CV02709, Apéndice de la Petición de *Certiorari*, págs. 57-58.
[6] Apéndice de la Petición de *Certiorari*, págs. 17-19.
[7] Apéndice de la Petición de *Certiorari*, págs. 20-24.

Demanda de Petición de Herencia que finalizó el 20 de octubre de 2021.

Así las cosas, el 20 de mayo de 2022, la peticionaria cursó a los recurridos un interrogatorio y requerimiento de admisiones.[8] Luego de varios trámites procesales, el 30 de junio de 2022, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* declarando Ha Lugar la Demanda de desahucio.[9] Sin embargo, el foro primario ordenó la continuación de los procedimientos en torno al cobro de dinero.

Luego de concederse una prórroga para que los recurridos respondieran al requerimiento de admisiones, sin que estos cumplieran con lo solicitado, el Tribunal de Primera Instancia procedió a dar por admitido el mismo.[10] En lo pertinente, quedaron admitidos los hechos siguientes: (1) que los recurridos conocían de la existencia de la peticionaria como única hija del señor Mercado Correa desde al menos el año 2019; (2) que estos no poseían el apartamento en concepto de dueños; (3) que aun reconociendo que no poseían título sobre el apartamento, mantuvieron la posesión, uso y disfrute de este, (4) que los recurridos poseyeron el apartamento sin autorización de la peticionaria y sin pagar canon de arrendamiento y (5) que existió mala

---

[8] Apéndice de la Petición de *Certiorari*, págs. 38-45.
[9] Apéndice de la Petición de *Certiorari*, págs. 61-63.
[10] Apéndice de la Petición de *Certiorari*, pág. 68.

fe.[11] En consideración a lo anterior la peticionaria presentó una *Moción de Sentencia Sumaria*.

Así las cosas, el 21 de septiembre de 2022, el Tribunal de Primera Instancia emitió una segunda *Sentencia Parcial*.[12] En esta determinó que, aun tomando en cuenta las admisiones anteriores, existía controversia sobre la procedencia de los frutos dejados de percibir por la peticionaria y la cuantía reclamada. Además, entendió que no existía controversia de que los recurridos advinieron en conocimiento de que carecían de título válido sobre el apartamento desde el 20 de octubre de 2021.

A petición de la peticionaria, el 6 de marzo de 2023, el Tribunal de Primera Instancia celebró una Vista Evidenciaría.[13] En la vista, la prueba consistió en el testimonio de un perito tasador y de la peticionaria. En lo pertinente, el perito testificó que su gestión se enfocó en realizar un estudio de rentas de mercado. Según este, el valor mensual del apartamento es de mil quinientos dólares ($1,500).[14]

El 10 de marzo de 2023, el Tribunal de Primera Instancia emitió una *Sentencia* declarando No Ha Lugar la acción en cobro de dinero. Concluyó que la peticionaria no presentó evidencia alguna para demostrar que los recurridos hubiesen

---

[11] Apéndice de la Petición de *Certiorari*, págs. 91-92.
[12] *Resolución Parcial* del Tribunal de Primera Instancia, Apéndice de la Petición de *Certiorari,* págs. 109-119.
[13] Según surge del expediente, la Vista Evidenciaría fue celebrada en rebeldía, debido a que la parte recurrida no compareció. Apéndice de la Petición de *Certiorari*, págs. 123 y 179.
[14] Apéndice de la Petición de *Certiorari*, págs. 123 y 167.

alquilado el inmueble o recibido algún tipo de ganancia durante la posesión de este. Además, entendió que tampoco se demostró que la peticionaria, de haber tenido la posesión, lo hubiera alquilado. Por tanto, entendió que el reclamo de cobro de renta era especulativo.[15]

Inconforme, el 12 de abril de 2023, la peticionaria presentó una *Apelación* ante el Tribunal de Apelaciones. En esta, arguyó, en primer lugar, que el foro primario erró al determinar que los recurridos poseían el inmueble de mala fe desde el 21 de octubre de 2021 y no desde el 18 de marzo de 2019. Además, alegó que, para propósitos de su reclamación, no procedía probar que la parte que ocupó la propiedad de mala fe obtuvo frutos de esta o que de la peticionaria haber tenido su posesión lo hubiera alquilado. El 21 de junio de 2023, el Tribunal de Apelaciones emitió una *Sentencia* confirmando el dictamen del Tribunal de Primera Instancia.

Aún inconforme, el 24 de julio de 2023, la señora Mercado Vélez acudió ante nos mediante una Petición de *Certiorari* en la que señaló que el Tribunal de Apelaciones cometió los errores siguientes:

1. Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia donde declara No Ha Lugar, la reclamación de cobro de dinero bajo el Art. 730 del Código Civil por entender que es totalmente especulativa.

2. Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia donde declara No Ha Lugar la reclamación de cobro de dinero bajo el Art. 730 del Código

---

[15] Apéndice de la Petición de *Certiorari*, págs. 178-180.

Civil por entender que es necesario el probar que la parte que ocupa la propiedad de mala fe obtuvo frutos durante la ocupación.

3. Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia donde declara No Ha Lugar la reclamación de cobro de dinero bajo el Art. 730 del Código Civil por entender que la parte demandante debía probar que de haber tenido la posesión del inmueble lo hubiera rentado.

4. Erró el Honorable Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia donde declara No Ha Lugar [la] reclamación de cobro de dinero bajo el Art. 730 del Código Civil por entender que la parte demandada tenía un título sobre la propiedad, a pesar de que fuera defectuoso.

Examinado el recurso ante nuestra consideración, el 27 de octubre de 2023, procedimos a expedir el auto. No habiendo los recurridos comparecido dentro del término concedido, dimos por sometido el asunto para su adjudicación en los méritos. Por lo cual, nos encontramos en posición de resolver.

**II**

**A.**

El Art. 703 del Código Civil de 2020, 31 LPRA sec. 7821, dispone que la posesión es "la tenencia de una cosa o el disfrute de un derecho por una persona".[16] Según el Memorial

---

[16] Por tratarse de una controversia iniciada ante el Tribunal de Primera Instancia en septiembre de 2022, consideramos que es de aplicación el Código Civil de 2020, 31 LPRA secs. 5311 et seq., aun cuando la posesión del bien inmueble ocurrió previo a su aprobación. EL Art. 1808 del Código Civil de 2020,31 LPRA 11713, dispone que "los derechos nacidos y no ejercitados antes de la entrada en vigor de este Código, subsisten con la extensión y en los términos que le reconoce la legislación precedente; pero sujetándose, en cuanto a su ejercicio y procedimientos para hacerlos valer, a lo dispuesto en este Código". Ambos Códigos en cuanto a la posesión de mala fe y el deber de recobrar los frutos dejados de percibir conceden derechos con la misma extensión y términos.

Explicativo del Borrador del Proyecto del Código Civil de 2020, esta definición "abarca todo tipo de posesión". M. Garay Aubán, *Código Civil 2020 y su Historial Legislativo*, Ediciones SITUM, 2020, T.I, pág. 525. Además, entre los tipos de posesión que reconoce nuestro ordenamiento se encuentra la posesión de buena fe y la de mala fe.

Conforme al Art. 710 del Código Civil de 2020, 31 LPRA sec.7828, se reputa como "poseedora de buena fe a la persona que ignora que en su título o modo de adquirir existe vicio que lo invalida. Se reputa poseedora de mala fe a la persona que se halla en el caso contrario." "La buena fe del poseedor se presume siempre, y al que afirma la mala fe de un poseedor corresponde la prueba". 31 LPRA sec. 7829. Por tanto, hemos establecido que, la alegación de posesión de mala fe es una cuestión de hecho que debe estar sustentada en prueba suficiente para destruir la presunción y, en última instancia, le corresponde al tribunal determinar si existe la mala fe. *Consejo v. Villa Edamorga*, 161 DPR 785, 798 (2004); *Jiménez v. Reyes,* 146 DPR 657, 664 (1998).[17]

---

[17] Es menester recordar que como norma general los foros apelativos le damos gran respeto y deferencia a las determinaciones de hechos realizadas por los Tribunales de Primera Instancia por estar estos en mejor posición de aquilatar la prueba. Como excepción, los tribunales apelativos podemos descartar estas determinaciones cuando medie pasión, prejuicio o parcialidad, o cuando se incurra en error manifiesto. Solo se podrá intervenir cuando del análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Véase*, *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 792-793 (2020); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-772 (2013); Miranda *Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 974 *(*2009).

De manera similar, nos indica Santos Briz que "[l]a apreciación de los hechos reveladores de la buena o de la mala fe, en cuanto a su existencia, es cuestión de hecho reservada a los tribunales de instancia,

En el pasado hemos indicado que en la posesión de buena fe deben concurrir los elementos siguientes: (1) título o modo de adquirir; (2) vicios en ese título o modo, e (3) ignorancia de esos vicios por el poseedor. *Véase*, *Consejo v. Villa Edamorga*, *supra*, pág. 798; *Capó v. A. Hartman & CÍA*, 57 DPR 196, 203 (1940); Manresa y Navarro, *Comentarios al Código Civil*, 1972, T. IV, 7ma ed., pág. 113. ***A contrario sensu*, estamos ante un supuesto de mala fe cuando el poseedor conoce que hay un vicio en su título.**

En cuanto a la ignorancia del vicio sobre el título hemos establecido que, "debe estar fundamentado en una ignorancia de tipo sicológico que, a su vez, se ajuste al principio general de que todas las personas deben obrar sin ocasionar daños a otras. Además, esa ignorancia no puede estar fundamentada en un error inexcusable". *Consejo v. Villa Edamorga*, *supra*, pág. 800. Albaladejo comentó sobre la mala fe del Art. 433 del Código Civil de España- equivalente al Art. 710 del Código Civil de 2020- lo siguiente:

> Si la buena fe, ex artículo 433, consiste en la ignorancia de la ineficacia del título que le legitima la posesión. La mala fe es lo contrario, esto es, el poseedor no ignora que no es titular del derecho que le legitima para poseer. Y dentro de este concepto de mala fe tenemos que incluir no sólo a aquel que conoce que su título es ineficaz, sino a quien posee sin título. Por ello, la mala fe no se valora sólo en relación al título; sino que se valora en relación al elemento subjetivo: conocimiento de la no legitimación para poseer. M. Albaladejo, Comentarios al Código Civil y

---

no revisable en casación, salvo evidente error formalmente acusado por cause procesal idóneo en la apreciación de la prueba". J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T.2, pág. 583.

compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1993, T. VI, pág. 414.

En síntesis, **el concepto de la mala fe posesoria también incluye a quien posee sin título porque la mala fe no está fundamentada en la existencia de un título defectuoso, sino en el conocimiento de la no legitimación para poseer.**

### B.

Al cesar la posesión por el reclamo del propietario o por otro poseedor con mejor derecho, el Código Civil distingue los derechos y obligaciones del poseedor cesante según este haya sido de buena fe o de mala fe. *Véase*, Arts. 726-733 del Código Civil de 2020, 31 LPRA 7871-7878; J. Santos Briz y otros, *Op. cit.*, págs. 52-56; Manresa y Navarro, *Op. cit.*, pág. 333. Estas normas son extensivas a los frutos que generó el bien poseído.[18] Cuando el poseedor cesante fue uno de buena fe, este adquiere los frutos percibidos siempre que no se interrumpa la posesión. Art. 726 del Código Civil de 2020, 31 LPRA sec. 7871. Además, sobre los frutos pendientes tendrá derecho al reembolso de los gastos incurridos en la producción y a una parte del producto líquido. Art. 727 del Código Civil de 2020, 31 LPRA sec. 7872.

En sentido contrario, el Art. 730 del Código Civil, 31 LPRA sec. 7875, establece que "[e]l poseedor de mala fe debe abonar el valor de los frutos percibidos y el **de los que el**

---

[18] El Art. 259 del Código Civil de 2020, define los frutos como "los provechos que produce un bien sin que se altere o disminuya su sustancia". 31 LPRA 6071.

**poseedor legítimo hubiera podido percibir"**. (Negrilla suplida). **Surge claramente que, el poseedor de mala fe no tiene derecho alguno a los frutos que produce el bien**. Siendo ello así, el Art. 730 no solo le impone la obligación de restituir lo obtenido, sino que además debe resarcir al legítimo poseedor por lo que este hubiera obtenido.[19] Lo anterior surge porque se entiende que el poseedor de mala fe retuvo un bien que sabía que no le correspondía y en consecuencia no tenía derecho a los provechos que generó. *Véase*, Manresa y Navarro, *Op. cit.*, págs. 342-343. Además, por su tenencia indebida, priva a su propietario de poder utilizar el bien. *Véase*, M. Albaladejo, *Op. cit.*, pág. 417. Por tanto, el artículo parte de dos bases justificadoras; primero, reprimir los beneficios obtenidos por un acto ilícito y, segundo, resarcir el daño causado por la privación del uso y disfrute del bien. *Íd.*, pág. 412.

La obligación de abonar el valor de los frutos de los que el poseedor legítimo hubiera podido percibir, o frutos *percipiendi,* es una doctrina que ha sido raramente atendida por este Tribunal. Así, en *Capó v. A. Hartman & CÍA*, 57 DPR 196 (1940), la controversia se centraba en dos fincas que fueron poseídas de mala fe por una sociedad mercantil. Durante la posesión de estas, las fincas fueron arrendadas y se utilizaron para producir caña de azúcar. Entre otros

---

[19] Además, este Tribunal ha notado que "tanto los frutos percibidos como los que el poseedor legítimo hubiese podido percibir deben ser objeto de prueba". *Consejo v. Villa Edamorga*, supra, págs. 804-805 (citando a *Costas v. G. Llinás & Co.*, 66 DPR 730, 750 (1946)).

asuntos, el Tribunal tenía que determinar sobre cuál cuantía de dinero el poseedor legítimo tenía derecho en concepto de los frutos *percipiendi*, entiéndase, lo pagado en canon de arrendamiento que recibieron los poseedores de mala fe, o el valor neto de los frutos producidos por las fincas. El Tribunal resolvió que era la segunda.

En particular, el Tribunal clarificó que los frutos que el poseedor legítimo hubiera podido percibir no son los realmente percibidos por el poseedor de mala fe. *Íd.,* pág. 205.[20] Específicamente advertimos de no caer en el error de creer que el valor de los frutos percibidos y los frutos *percipiendi* son equivalentes, ya que "[p]udiera darse el caso de que el poseedor tuviera la finca completamente abandonada y por consiguiente nada le produjese, y en ese caso, según la interpretación propuesta por los apelantes, como nada les produjo la finca, nada tendrían que devolver". *Íd.* Por tanto, el poseedor legítimo tiene derecho a los frutos que debiera haber producido la cosa. *Íd.,* pág. 206.

Luego en *Consejo v. Villa Edamorga*, *supra*, este Tribunal aplicó el Art. 384 del Código Civil de 1930, 31 LPRA ant. sec. 1470, equivalente al vigente Art. 730 del Código Civil de 2020, *supra*, en contra de unos poseedores de mala fe que

---

[20] De manera similar, nos explica Albaladejo que "los frutos 'que el poseedor legítimo hubiera podido percibir' constituyen una noción hipotética, pero aceptada desde el Derecho romano, como una de las formas en que el poseedor de mala fe asume una responsabilidad de restitución que puede ir más allá de lo que efectivamente la cosa ha producido". M. Albaladejo, *Op. cit.*, pág. 416. Además, explica que esta doctrina implica "una pretensión de naturaleza obligacional indemnizatoria, con su fuente en la lesión que padece el propietario por la privación de la tenencia y goce de la cosa". *Íd.,* pág. 418.

poseyeron varios locales de un condómino. En esa ocasión, citando al tratadista Hernández Gil, reconocimos que la determinación de los frutos que el poseedor legítimo hubiese podido percibir es una subjetiva y no es sencilla cuando el vencedor en la posesión no se "dedica a explotación o empresa concerniente al destino de la cosa objeto de la contienda" o cuando "la propia cosa ha sido antes explotada por él". *Íd.*, pág. 804. Lo anterior porque en estas situaciones no se pueden utilizar las gestiones pasadas para determinar la cuantía a satisfacer. Por tanto, ante la falta de "esa actividad personal o profesional del legítimo poseedor, **la determinación de los frutos podidos percibir habrá de hacerse con base en una explotación normal**". *Íd.* (Negrilla suplida). Así las cosas, el Tribunal entendió que el provecho que obtendría el Consejo de Titulares era diferente al de los poseedores de mala fe, pero todavía resarcible en una cantidad líquida, en concepto de las respectivas cuotas a los usuarios por el uso de los locales.[21]

---

[21] El Tribunal razonó específicamente que:

> De ordinario las áreas recreativas no producen los mismos frutos que las áreas destinadas a un uso comercial. Sin embargo, ello no es obstáculo para que, aunque en una cantidad menor, el Condominio Parkside, pudiese haber obtenido frutos como consecuencia del uso recreativo de los locales, por ejemplo, mediante el cobro de cuotas a los usuarios para la limpieza o para asegurar la disponibilidad de los locales. **Entendemos que tal solución no es especulativa**, sino que, por el contrario, toma en consideración los métodos administrativos que frecuentemente ponen en vigor los consejos de titulares de los inmuebles sometidos al régimen de propiedad horizontal para permitirles a los condóminos llevar a cabo sus actividades recreativas. *Íd.*, pág. 805 (Negrilla suplida).

**III**

En este caso, los foros inferiores tenían el deber de determinar, primero, desde qué momento los recurridos poseyeron de mala fe el bien inmueble en controversia y, segundo, si la peticionaria tenía derecho al pago de un canon de arrendamiento por concepto de los frutos dejados de percibir durante la posesión de mala fe de los recurridos.

Los foros recurridos entendieron que el apartamento fue ocupado de mala fe a partir del mes de octubre de 2021, cuando finalizó la acción de petición de herencia, ya que fue desde ese momento que los recurridos estuvieron en posesión sin derecho alguno. Por otra parte, ambos foros concluyeron que la reclamación de la peticionaria sobre los frutos dejados de percibir era improcedente y especulativa. Fundamentaron su determinación en que nunca existió un Contrato de Arrendamiento entre las partes litigantes y que no se demostró que la señora Mercado Vélez tuviera la intención de arrendar el apartamento de haber tenido posesión de este.

Por su parte, la peticionaria arguyó que en una reclamación de frutos dejados de percibir no se requiere demostrar que el poseedor de mala fe obtuvo frutos durante la ocupación; que el dueño de haber mantenido la posesión hubiera arrendado el mismo; ni que el poseedor de mala fe poseía sin título. Entendió que las determinaciones de los foros recurridos avalan que un poseedor de mala fe disfrute

indebidamente de un bien sin tener que compensar al dueño legítimo.

Primeramente, evaluamos si los foros recurridos erraron al resolver que la parte recurrida ocupó la propiedad de mala fe a partir de octubre de 2021, momento en que se declaró la nulidad de su título hereditario. Concluimos que esta determinación está en conflicto con el balance más racional y justiciero de la evidencia en el expediente. Nos explicamos.

Como ya discutimos, existe posesión de mala fe desde el momento que el poseedor conoce que no tiene legitimación para poseer. Lo anterior puede incluir supuestos de posesión sin título o cuando hay conocimiento de que el título tiene un vicio. Por lo cual, los tribunales debemos estar atentos a las circunstancias particulares de cada caso. Aquí los recurridos poseyeron con conocimiento de que su título estaba viciado con anterioridad a una determinación judicial.

Según surge del expediente, mediante admisiones válidas se demostró que los recurridos tenían conocimiento del vicio en su título hereditario previo a la Sentencia Final emitida en el Caso Civil Núm. SJ2019CV02709. En particular, el Tribunal de Primera Instancia dio por admitido los hechos de que, "los [recurridos] conocían de la existencia de la demandada como única hija de Luis Rubén Mercado Correa desde al menos el año 2019" y "existe mala fe". Así quedó establecido que los recurridos sabían de la existencia de la

señora Mercado Vélez, como única hija del causante, desde al menos el 2019 cuando se instó la petición de herencia.

El foro primario, luego de darle oportunidad al recurrido de contestar el requerimiento de admisiones, erró al no darle el efecto pleno que tenía el tomarlas por admitidas, entiéndase, liberar a la parte peticionaria de tener que presentar evidencia sobre la mala fe del poseedor. Resolver lo contrario desvirtuaría el propósito del requerimiento de admisiones de "proporcionar un cuadro claro de las cuestiones en controversia entre las partes" a través de preguntas que "defin[en] y limita[n] la controversia desde el punto de vista del proponente, logrando admisiones que pueden usualmente evadirse al contestar las alegaciones o interrogatorios o las preguntas formuladas en el curso de una deposición". *Rosado v. Tribunal Superior*, 94 DPR 122, 133 (1967). Por tanto, el cómputo de las ganancias por rentas dejadas de percibir tiene que realizarse desde el momento en que se convirtieron en poseedores de mala fe en el 2019 y no desde el día en que finalmente se declaró nula la Declaratoria de Heredero del causante.

Establecido lo anterior, el Art. 730 del Código Civil, *supra*, es claro en cuanto a que el poseedor de mala fe tiene una obligación de restituir tanto el valor de los frutos percibidos por él como los que el poseedor legítimo hubiera podido percibir. Esta segunda cuantía no responde al beneficio que generó el bien en manos del poseedor de mala fe sino al provecho que debiera haber obtenido su poseedor

legítimo. *Capó v. A. Hartman & CÍA*, *supra*, págs. 205-206. El propósito de la obligación es garantizar que se indemnice al poseedor legítimo por el daño producido dado a la tenencia indebida. **El hecho de que el poseedor de mala fe no genere frutos del bien ocupado no lo libera de su responsabilidad porque el poseedor legítimo podía haber aprovechado el bien.** Por tanto, no tenemos duda de que conforme al Art. 730 del Código Civil, *supra*, la señora Mercado Vélez tenía derecho a reclamar una cuantía de dinero por los frutos que el apartamento le hubiera generado.

Por otra parte, los foros recurridos indicaron erróneamente que la cuantía a pagar era una especulativa. **En el curso ordinario, determinar cómo un poseedor legítimo utilizaría el bien y, por tanto, cuánto dinero generaría, estaría sujeto a un estudio de cómo este en el pasado ha utilizado el bien o bienes similares en su poder. Pero la ausencia de lo anterior no es impedimento para que el tribunal determine una cuantía.** Ni el Código Civil, *supra*, ni la jurisprudencia interpretativa imponen como exigencia al poseedor legítimo tener que probar que, de ocupar la propiedad, realizaría actos determinados con el bien.

Por el contrario, en *Consejo v. Villa Edamorga*, *supra*, pág. 804, reconocimos que, a falta de "actividad personal o profesional del legítimo poseedor, la determinación de los frutos podidos percibir habrá de hacerse con base en una explotación normal". Lo anterior va acorde con la razón de ser de esta doctrina, entiéndase, castigar la mala fe del

poseedor y resarcir los daños causados. *Capó v. A. Hartman & CÍA*, *supra*, pág. 205; M. Albaladejo, *Op. cit.*, pág. 412.

Ello así, resulta razonable concluir que una persona que es dueña de un apartamento lo arriende para generar un ingreso adicional y sufragar los gastos que se generan al tener una segunda propiedad. Además, resulta persuasivo que en el Informe y testimonio del perito tasador que presentó la peticionaria se utilizaron las rentas mensuales de otros apartamentos del mismo condominio como comparables.[22] **Arrendar el inmueble en este caso constituye una explotación normal de la cosa.** No obstante, **entendemos que la señora Mercado Vélez tiene derecho a una cuantía menor a la que reclama de mil quinientos dólares ($1,500) mensuales.** Nos explicamos.

En síntesis, no nos resulta plausible establecer que la renta por arrendamiento, por sí sola, es el fruto que generaría el apartamento para la señora Mercado Vélez ya que dedicar el bien a ese fin implica varios gastos. **Consideramos que la peticionaria propiamente tiene derecho a la ganancia que hubiera generado el arrendamiento del apartamento.** El Art. 259 del Código Civil, 31 LPRA sec. 6071, define los frutos como "los provechos que produce un bien sin que se altere o disminuya su sustancia". Según la Real Academia Española la palabra "provecho" se define como "[b]eneficio o utilidad que se consigue o se origina de algo o por algún

---

[22] *Véase*, Apéndice de la Petición de *Certiorari*, en las págs. 123 y 166.

medio" y "utilidad o beneficio que se proporciona a alguien".[23] **La peticionaria no solo tenía que demostrar el valor de la renta, sino además, la ganancia a obtenerse.** De manera ilustrativa, recalcamos que *en Capó v. A. Hartman & CÍA*, *supra*, los frutos de las fincas en controversia fueron el valor neto de lo producido, o sea la ganancia que generaba la venta de caña de azúcar. En ese caso, este Tribunal no solo consideró el valor del quintal de azúcar en el mercado de Puerto Rico, sino que, además, evaluó si el precio incluía los gastos de producción del colono y las cantidades que deducía la central en concepto de envase, flete y seguro al mercado de Nueva York. *Íd.*, págs. 206-212.

En vista de que la ganancia generada por alquiler del apartamento es una determinación que debe particularizarse y sustentarse en la prueba, *Consejo v. Villa Edamorga*, *supra*, págs. 804-805, entendemos pertinente que el Tribunal de Primera Instancia celebre una Vista Evidenciara. En esta las partes podrán presentar evidencia a fin de demostrar los estimados gastos razonables de haber alquilado el apartamento desde el 2019 hasta la fecha en que este fue desocupado. Lo anterior puede incluir, entre otras cosas, los pagos en pólizas de seguros, mantenimientos y reparaciones.

---

[23]Diccionario de la Lengua Española, 2023, https://dle.rae.es/provecho?m=form (última visita, 13 de mayo de 2024).

**IV.**

Por los fundamentos antes expuestos, se revoca la Sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo establecido en esta Opinión.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Blanca Lourdes Mercado Vélez<br><br>    Peticionaria<br><br>        v.<br><br>Orlando Kent Mercado White y otros<br><br>    Recurridos | CC-2023-0478 |

SENTENCIA

En San Juan, Puerto Rico, a 7 de agosto de 2024.

Por los fundamentos antes expuestos, se revoca la Sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo establecido en esta Opinión.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez está conforme en parte y disiente en parte con la expresión siguiente:

"Estoy de acuerdo con aquella parte de la Opinión que concluye que la posesión de mala fe de los demandados comenzó, al menos, desde que la Sra. Blanca Lourdes Mercado Vélez instó su demanda de sentencia declaratoria y petición de herencia en el 2019. Asimismo, concuerdo con que el hecho de que no se generen frutos durante la ocupación del bien no libera al poseedor o a la poseedora de mala fe de resarcir al dueño legítimo o a la dueña legítima por los frutos que hubiera podido percibir o por el tiempo que pudo haber aprovechado su propiedad y no lo hizo. Sin embargo, no suscribo la conclusión a la que se llega ni el mandato que se le emite al foro de instancia.

La importancia de determinar si quien posee un bien que no le pertenece actuó de buena o de mala fe radica en los deberes y los derechos que tendrá esa parte frente a la parte que ostente la posesión legítima. En lo pertinente, y como resalta la Opinión mayoritaria, el poseedor de mala fe tiene el deber de "abonar el valor de los frutos percibidos y el de los que el poseedor legítimo hubiera podido percibir". Art. 730 del Código Civil de 2020, 31 LPRA sec. 7875. Ahora bien, **quien posee de mala fe solamente tiene derecho a que se le reembolse por los gastos necesarios en los que haya incurrido**, sin derecho a retener el bien hasta que se los satisfagan. 31 LPRA 7873. "Son gastos necesarios los que mantienen la cosa o la aseguran en su estado original o para el uso al cual se ha destinado". Íd. Por el contrario, los gastos útiles —destinados a aumentar o a asegurar la producción de la cosa— solamente se abonan a la persona poseedora de buena fe junto con su derecho de retención. 31 LPRA sec. 7873.

El pronunciamiento que realiza la mayoría de esta Curia le otorga una segunda oportunidad a la parte demandada para presentar prueba que, de haberlo interesado, debió presentar en el juicio en su fondo. Además, invierte indebidamente el peso de la prueba y le impone a la señora Mercado Vélez el deber de presentar evidencia para demostrar los gastos estimados que hubiese incurrido la parte demandante, de haber alquilado el inmueble, para así determinar cuál fue la ganancia neta que pudo haber obtenido la señora Mercado Vélez durante el tiempo que estuvo privada del bien que le pertenece.

Para sustentar su conclusión, la Opinión cita lo resuelto en Capó v. A. Hartaman & Cía, 57 DPR 196 (1940). Si bien en aquel caso le concedimos a la parte demandante el valor neto de los frutos producidos, no es menos cierto que, además de los gastos de producción, los costos por concepto de envase, flete y seguro surgieron del propio testimonio de quien poseía la propiedad durante el periodo en cuestión. Íd., págs. 208-212. Es decir, la parte demandada en aquel pleito presentó oportunamente la evidencia atinente a demostrar qué gastos, de acuerdo con lo establecido en el Artículo 384 del Código Civil de 1930 (CCPR 1930) 31 LPRA ant se. 1470 —equivalente al Artículo 728 del Código Civil de 2020, *supra*—tenían derecho a ser considerados a la hora de determinar la cuantía de los frutos a la que el dueño legítimo tenía

derecho. **Ello dista grandemente de los hechos de este caso.**

En el caso que nos ocupa, el Tribunal de Primera Instancia le anotó la rebeldía a la parte demandada desde que se presentó la demanda debido a su incomparecencia.[24] El 12 de mayo de 2022, el tribunal de instancia dejó sin efecto la rebeldía únicamente contra el codemandado Orlando Kent Mercado White.[25] Sin embargo, el 22 de febrero de 2023 el Tribunal de Primera Instancia le anotó la rebeldía nuevamente, esta vez como sanción tras su patrón de incumplimiento reiterado con las órdenes del Tribunal.[26] Como corolario de ello, el tribunal de instancia resolvió que el juicio se vería en rebeldía.[27] Recordemos que el efecto de la anotación de rebeldía es que se consideran ciertos todos los hechos bien alegados y que la parte en rebeldía no puede presentar prueba para controvertirlos. Continental Ins. Co. v. Isleta Marina, 106 DPR 809, 814 (1978).

Nótese que la señora Mercado Vélez fue diligente en el trámite del caso y presentó prueba pertinente a sus alegaciones, por lo cual en el expediente obra prueba testimonial y pericial suficiente que sostiene la determinación de la cantidad que solicitó. Por el otro lado, la parte demandada, como consecuencia de la anotación de rebeldía en su contra, no refutó la prueba que presentó la señora Mercado Vélez ni presentó prueba testimonial, documental, pericial, ni de ninguna otra naturaleza, que evidenciare lo contrario. Además, no podemos perder de vista que la razón por la cual el foro primario le anotó la rebeldía a la parte demandada una segunda ocasión fue porque esta incumplió reiteradamente con las órdenes del tribunal. Entonces, ordenar la celebración de una vista evidenciaria resultaría en condonar la dejadez de la parte demandada. Así las cosas, considero que la cuantía mensual de mil quinientos dólares ($1,500) por el tiempo que se prolongó la posesión de mala fe es razonable en proporción a los frutos que la señora Mercado Vélez hubiese podido percibir; dicho de otra forma, al justo valor del bien por el tiempo en que no pudo ostentar la posesión.

---

[24] Véase *Apéndice de la Petición de Certiorari*, pág. 178.
[25] Íd.
[26] Íd.
[27] Íd.

Me veo forzada a disentir, en parte, pues el efecto que tiene la Opinión mayoritaria es que quien ahora debe demostrar aquellos "gastos *razonables*" en los que pudieron haber incurrido o no los poseedores de mala fe es la propia parte demandante, la señora Mercado Vélez. Lo anterior no es solamente incorrecto desde un punto de vista jurídico, sino que es tajantemente impráctico. Celebrar una vista evidenciaria *nueva*, cuando la parte demandada está en rebeldía, no abona al resultado más justo de esta controversia y dilatará innecesariamente la concesión del remedio al que la señora Mercado Vélez tiene derecho. **La cuantía de los gastos necesarios para la conservación del bien a ser deducida del valor de los frutos que se hubiesen percibido es un asunto que corresponde ser demostrado por quien posee de mala fe**.

Por todo lo anterior, revocaría, sin más, a los foros inferiores, y le concedería el remedio solicitado a la señora Mercado Vélez. Por los fundamentos aquí expuestos, estoy conforme en parte, y disiento en parte."

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo